Betty Lyons Williams, as administratrix of the estate of John Wesley Lyons, sued Dock Lyons, Calvin Lyons, Frank Gibson, and various other relatives, alleging that the defendants had converted property belonging to the estate of John Wesley Lyons. Specifically, the plaintiff claimed that the deceased, who was her father, had kept cash, believed to be in excess of $75,000, hidden at his home. She further claimed that, after her father's death, his brother Dock Lyons took the hidden cash, divided it among certain relatives, and kept a portion for himself.
After an ore tenus trial, the court entered a judgment against defendants Artress Cornmesser and Ailene Webb for $1000 each, and for $20,000 against defendants Dock Lyons, Calvin Lyons, and Frank Gibson, jointly and severally. Dock Lyons, Calvin Lyons, and Frank Gibson appealed, claiming that the evidence was not sufficient to support the $20,000 judgment against them. The appellants admit that they took money from the estate and divided it among various family members after paying funeral expenses, but they claim that they took only $10,000, not $75,000 as claimed by the appellee. The evidence produced at trial indicated the following facts: *Page 1281 
John Wesley Lyons lived in a one-room house with a tin roof and no running water. Mr. Lyons did repair jobs on heaters and stoves and received $325 a month in Social Security benefits. He once received a $9000 settlement for injuries sustained in an automobile accident. There was evidence that he saved and never spent much money. Frank Gibson testified that he found some money in a money bag in a bus outside John Wesley Lyons's home while Mr. Lyons was in the hospital dying. He testified that Dock Lyons told him to put the bag in Dock's truck, which he says he did. A few days later, after John Wesley Lyons had died, Dock Lyons gathered Gibson, John Lyons, and Calvin Lyons together to count the money. Dock and Gibson both claim that $10,000 was counted. Dock claims he distributed the money by giving $2000 to Betty Lyons Williams, $1000 to Ms. Williams's sister Sarah Bridges, $1000 to his niece Ailene Webb, $1000 to his niece Artress Cornmesser, $1000 to his daughter Hiever Lyons, $1000 to his daughter Mary Dean Lyons, $1000 to his grandson-in-law Frank Gibson, $200 to his son Matthew McMiller, $200 to his daughter Geraldine Robinson, and $200 to Mary Miller. Before trial, Frank Gibson, Hiever Lyons, Mary Dean Lyons, and Mary Miller returned to the plaintiff the amounts Dock claimed he gave them. Dock also testified that he used $1074 to pay funeral expenses, but he could not account for the remaining $326 of the claimed $10,000. Betty Williams, the plaintiff, testified that she asked Dock for $5000 and told him to take the rest but that he said he had to give some of the money to other relatives. She also testified that Dock told her that he was keeping $5000 for himself and giving other family members some of the money. Geraldine Robinson testified that Dock told her that $75,000 had been found, that he had put $5000 in a bank in Aliceville, and that he had given the rest to her brother Calvin to put in a credit union in Chicago. Dock testified that he bought an automobile for $2700 and tires for $300 a few days after his brother died and that $1000 of the money for the car came from a bank account he had in Aliceville and $2000 came from the trunk of his old car. The Aliceville bank had no records of this account. Dock testified that, a week after his brother died, he went to the bank in Aliceville with Calvin and that Calvin set up a $5000 account there. Dock claimed that Calvin had brought this money with him from Chicago.
The judgment of a trial court based on ore tenus evidence is presumed correct and its findings "will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence." McCoy v. McCoy, 549 So.2d 53, 57
(Ala. 1989). The trial court specifically found that Dock Lyons, Calvin Lyons, and Frank Gibson "willfully and intentionally retain[ed) money from the Estate of John Lyons and that they . . . together conspired to withhold said money from the estate." The trial court did not make a specific finding as to how much money was taken from the Lyons estate, and did not indicate whether the $20,000 award against the appellants was entirely compensatory or included punitive damages. Although the evidence was conflicting, there was evidence that more than $10,000 was taken. There was also evidence that each of the appellants aided in taking and distributing the money. The trial court's finding of willful and intentional acts by the appellants justified an award of punitive damages against them.Rainsville Bank v. Willingham, 485 So.2d 319, 322 (Ala. 1986). Thus, we cannot say that the trial court's findings were "palpably wrong, manifestly unjust, or without supporting evidence." The judgment is therefore affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur. *Page 1282